UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA E. RIOPEL, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:11-cv-01169-WWE |
| | : | |
| SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY, | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Donna Riopel brought this action against defendant Southern New England

Telephone Company ("SNET") alleging discrimination and retaliation pursuant to the Americans

With Disabilities Act, 42 U.S.C. §12101 *et seq.*, discrimination pursuant to Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. §794, and discrimination pursuant to the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §621-34.

Defendant has moved to dismiss all counts for failure to state a claim.  For the following

reasons, defendant's motion will be granted.

## BACKGROUND

For purposes of ruling on this motion to dismiss, the Court accepts the allegations of the

complaint as true and draws all inferences in favor of plaintiff.

SNET is a provider of telecommunications services within the state of Connecticut and is

affiliated with national telecommunications providers SBC Communications and AT&T.  On

August 23, 1996, plaintiff began full-time employment with SNET.  During her employment

with SNET, she received many satisfactory performance evaluations.

Plaintiff provided SNET and/or SNET's agent, AT&T Integrated Disability Service

1

Center ("IDSC") the benefit administrator for SNET, with medical information indicating she suffered acute sleep apnea, post traumatic stress disorder, and depression.  Based upon her health condition, plaintiff was approved for a three-day leave under the Family and Medical Leave Act ("FMLA") in December 2005.

On March 7, 2006, one week prior to taking a scheduled medical leave, plaintiff met with Catherine Calkins, SNET Area Manager and plaintiff's direct supervisor.  On May 22, 2006, IDSC advised Calkins that plaintiff was requesting a permanent work accommodation because of her health condition.  Plaintiff requested a transfer to New Haven to avoid travel to Hartford. Her request was denied.

On September 11, 2006, Calkins told plaintiff that plaintiff needed to focus on her job. On September 25, 2006, Calkins was notified that plaintiff had called IDSC to initiate a claim for short-term disability benefits.  The same day, plaintiff left Calkins a voicemail indicating that she would not be at work because of her health issues.  Plaintiff left a similar message the following day.

On September 29, 2006, plaintiff requested time off from SNET based on the provisions of the FMLA.  That day, SNET discontinued plaintiff's participation in the employee welfare benefits and denied plaintiff disability benefits for which she had previously applied.

On November 3, 2006, plaintiff applied for short-term disability benefits pursuant to SNET's employee welfare program.  Three days later, plaintiff was informed that her FMLA request was denied.

On November 27, 2006, plaintiff requested a review of the decision to deny her claim for disability benefits.

2

On January 4, 2007, plaintiff was placed on authorized unpaid leave, retroactive to September 29, 2006, based on her request for a review of the decision to deny her benefits. Plaintiff had not been receiving pay since leaving work on September 28, 2006.

Plaintiff acknowledges that she struggled to perform her duties in a complete and focused manner during the entirety of 2006 because of her medical issues.  During her employment, Calkins accused plaintiff of insubordination, taking excessive lunch breaks, hiding while at work, and screening her calls.  On February 18, 2007, plaintiff provided SNET with medical information from her treating physicians.

On March 30, 2007, Calkins was notified that plaintiff's appeal of the decision to deny her request for disability benefits was denied.  On April 4, 2007, Calkins told plaintiff that plaintiff would be considered to have voluntarily resigned her employment with SNET if she did not return to work by April 11, 2007.

On April 10, 2007, plaintiff informed Calkins that she was not physically able to return to work.  Two days later, plaintiff was removed from SNET's payroll.

On June 24, 2007, plaintiff requested SNET and its benefits administrator to restore her previously terminated benefits.  SNET told plaintiff that her request was under review multiple times, but plaintiff never received a final response.

On October 10, 2007, plaintiff filed a complaints with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the federal Equal Employment Opportunity Commission ("EEOC").

On October 16, 2007, Calkins was notified by IDSC that plaintiff had again been denied her request for disability benefits.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**ADA and ADEA Claims**

To be timely under the ADA or the ADEA, a plaintiff must file a charge with the EEOC within three hundred days of the alleged discriminatory or retaliatory acts. Mendes v. Jednak, 92 F. Supp. 2d 58, 63 (D. Conn. 2000). "This requirement functions as a statute of limitations, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon plaintiff's suit in district court . . . ." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) (internal citation omitted).

In her complaint, plaintiff alleges that she filed her EEOC charge on October 10, 2007. Accordingly, any acts that occurred more than three hundred days prior, i.e., before December 14, 2006 are time-barred. See, e.g., O'Hazo v. Bristol-Burlington Health Dist., 599 F. Supp. 2d 242, 252-53 (D. Conn. 2009). Thus, the question becomes whether plaintiff has alleged any

4

adverse employment actions after December 14, 2006.  An adverse employment action is defined as a "materially adverse change" in the terms and conditions of employment.  Sanders v. New York City Human Resources Admin., 361 F.3d 749,  (2d Cir. 2004).

On January 4, 2007, plaintiff was placed on authorized unpaid leave, retroactive to September 29, 2006, based on her request for a review of the decision to deny her benefits.  However, plaintiff had not been receiving pay since leaving work on September 28, 2006.  In other words, plaintiff's request triggered an official status change from unauthorized unpaid absence to authorized unpaid leave pending her appeal.  This status change was not an adverse employment action.  The change actually benefitted plaintiff by giving her additional time to establish her entitlement to benefits and ensured that her seniority and benefit levels would be preserved in the event that he appeal was successful.

On March 30, 2007, plaintiff's appeal of the decision to deny her request for disability benefits was denied.  Plaintiff again appealed for restoration of her benefits on June 24, 2007.  However, the original decision to deny plaintiff benefits was denied on September 29, 2006, well outside the three-hundred day limitations period, and "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.  The existence of careful procedures to assure fairness . . . should not obscure the principle that limitations periods normally commence when the employer's decision is made."  Delaware State College v. Ricks, 449 U.S. 250, 261 (1980) (internal citation omitted).  Here, the SNET's decision to deny plaintiff disability benefits occurred on September 29, 2006, outside of the limitations period.

On April 4, 2007, Calkins told plaintiff that plaintiff would be considered to have

5

voluntarily resigned her employment with SNET if she did not return to work by April 11, 2007. On April 10, 2007, plaintiff informed Calkins that she was not physically able to return to work. Two days later, plaintiff was removed from SNET's payroll.  When plaintiff informed SNET that she was not physically able to return to work, she had been out of work for over six months without having been approved for disability or FMLA leave.  After her appeal was denied, plaintiff admits that unless she returned to work, she was to be considered to have voluntarily resigned.  Plaintiff further admits that she did not return to work and that SNET removed her form its payroll as it indicated it would.  Plaintiff has not alleged a constructive discharge, and her allegations demonstrate that she voluntarily declined to return to work.  Therefore, her separation from SNET was not the result of an adverse employment action.  As no adverse employment action occurred within the three-hundred day limitations period, plaintiff's claims pursuant to the ADA and ADEA will be dismissed.

**Rehabilitation Act Claims**

Connecticut's three-year statute of limitations for personal injury tort claims applies to claims under Section 504 of the Rehabilitation Act.  M.D. v. Southington Bd. Of Educ., 334 F.3d 217, 224 (2d Cir. 2003).  Therefore, in order to be timely filed, plaintiff's Rehabilitation Act claims must be based on acts that occurred on or after July 24, 2008, which was three years prior to the filing of the instant complaint on July 24, 2011.  According to the complaint, SNET's last discriminatory action occurred in 2007.  As no purported act of discrimination took place within the three-year statute of limitations period, plaintiffs claims under the Rehabilitation Act will be dismissed.

**Continuing Violation Theory**

Plaintiff argues that all of the acts about which she complains are related to the treatment of her in violation of law at the hands of SNET.  Further, the acts plaintiff alleges occurred outside of the three-hundred day time-frame are continuing acts and are as equally appropriate for inclusion in the allegations of violations as are the acts found within the three-hundred day period.  However, as defendant contends, the continuing violation theory does not apply based on the allegations in the complaint.  The Second Circuit has held that while the continuing violation theory "may apply to cases involving specific discriminatory policies or mechanisms, ... multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."  Lu v. Chase Inv. Services Corp., 412 Fed. Appx. 413, 416 (2d Cir. 2011) (internal quotations omitted).  Here, as in Lu, aside from conclusory allegations that defendant's acts were continuing, plaintiff has presented no evidence that SNET's actions were part of a discriminatory policy or mechanism on the part of SNET.  See id.  Here, plaintiff's complaint does not even allege that defendant's actions were taken as part of a specific discriminatory policy or practice, much less identify such.  Therefore, plaintiff's attempt to rescue her claims using the continuing violation theory fails.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED.


Dated this 7th day of September at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE